## TEXAS & P. RY. CO. v. MINNICK.

(Circuit Court of Appeals, Fifth Circuit. April 10, 1894.)

No. 196.

Trial—Province of Court.

The question of negligence should not be submitted to a jury in an action to recover for the death of an employe, where there is no evidence of any negligence other than that known to the employe before the occurrence of the accident, and which was assumed by him as incident to the risk of the employment.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This was an action by Maggie Minnick, for herself and as next friend of her children, against the Texas & Pacific Railway Company to recover damages for causing the death of her husband, W. W. Minnick. There was a verdict for plaintiff, but the judgment entered thereon was reversed by this court for error in the instructions. 6 C. C. A. 387, 57 Fed. 368. A new trial was had, and verdict and judgment again rendered for plaintiff. Defendant again brings the case here on writ of error.

T. J. Freeman and F. H. Prendergast, for plaintiff in error.

W. H. Pope, W. C. Lane, E. H. Farrar, B. F. Jonas, and E. B. Kruttschnitt, for defendant in error.

Before McCORMICK, Circuit Judge, and LOCKE and TOULMIN, District Judges.

McCORMICK, Circuit Judge. This case was before us at our last term, and was reversed and remanded. 6 C. C. A. 387, 57 Fed. 362. It has been again tried in the circuit court, the trial resulting in a judgment against the defendant below, to reverse which it brings this writ of error.

The plaintiff in error makes the following assignment of errors:

"First. The court erred in refusing the following charge, asked by the defendant: 'The plaintiff cannot recover in this cause (1) because Minnick assumed the risk of being injured by any peculiarity in the construction of defendant's engines; (2) because he is presumed to have known of the fact that there was no watchman at the bridge, and assumed the risk of being injured by reason of there being no bridge watchman.'

"Second. The court erred in charging the jury as follows: 'If the jury believe that a defective and dangerous engine set fire to a bridge on the line of the

railway of defendant, and thereby rendered the said bridge unsafe and dangerous, and unfit for the purpose for which it was used by defendant, and thereby caused the death of W. W. Minnick; and you further believe that defendant knew that said bridge was defective and dangerous, or by the exercise of reasonable care and prudence could have known of the condition of such defective and dangerous engine, and that defendant failed in this duty of precaution and care, and by reason of such failure on the part of defendant the said Minnick was killed—then you will find for plaintiff, unless you find for defendant under some other instruction.' Said charge was error, because there was no evidence that said engine that it is claimed set fire to the bridge was defective or dangerous, or unfit for the purposes for which it was used, and the charge was also error because there was no evidence that defendant knew that said engine was defective and dangerous, or unfit for the purposes for which it was used, or that defendant could have learned said facts by ordinary care.

"Third. The court erred in charging the jury as follows: 'Or if the jury believe from the evidence that one of the bridges on said line of railway of defendant company was defective and dangerous, and unfit for the purpose for which it was being used by defendant company, by reason of its being in a bad condition; and the jury further believe that the defendant knew of such defective and unfit condition of said bridge, or could have known of its condition by the exercise of reasonable care and prudence, and failed in this duty of precaution and care; and that said defective and dangerous condition of said bridge was the proximate cause of the death of said Minnick,—he was in the service of said defendant, engaged in operating an engine over the said line of railroad of defendant company as a locomotive engineer; and that the said Maggie Minnick is the surviving wife of said W. W. Minnick, and that John R. Minnick, A. B. Minnick, F. W. Minnick, Jennie Minnick, and Fannie Minnick are the surviving minor children of said W. W. Minnick,—then the jury will find for plaintiff, unless you will find for defendant under some other portion of these instructions.' This charge was error, because there was no evidence that the bridge in question was defective and dangerous, or unfit for the purposes for which it was being used. The said charge was not justified or called for by the evidence in the case.

"Fourth. The defendant requested the following instruction: 'No. 1. There is no law that compels the defendant company to have track walkers or watchmen at their bridges at night at all times. If Minnick knew there were no track walkers or watchmen at the bridge, he assumed the risk of being injured by reason of the fact that there were no track walkers or watchmen at the bridge; or if, by ordinary care, said Minnick could have learned that there were no track walkers or watchmen at the bridge, he cannot recover on the ground of the want of bridge watchmen.' The court qualified this charge by adding thereto as follows, and then gave it: 'But this would not preclude a recovery by plaintiff if you believe, from all the evidence, that defendant failed to use ordinary care to keep its bridge in proper condition for its engines and trains to pass over the same.' The court erred in not giving the charge as requested, because it was held on the former appeal of this case that said charge, without the qualifications, correctly presented the law of the case. The qualification to said charge was error, because there was no evidence that defendant failed to use ordinary care to keep its bridges in proper condition for trains to pass over.

"Fifth. The defendant requested the following instruction: 'No. 7. The fact that defendant had no watchmen at the bridge where the wreck occurred would not render the company liable if the deceased, Minnick, knew, or by ordinary care could have known, there were no watchmen at the bridge. And in this case, there being no evidence that Minnick did not know there were no watchmen at the bridge, under the circumstances of this case Minnick is presumed to have known the fact, and therefore the plaintiff cannot recover on the ground that there were no watchmen at the bridge.' The court qualified this charge as follows, and then gave it: 'But it would not preclude a recovery by plaintiff if you believe, from all the evidence, that defendant failed to use ordinary care to see that its bridges were in proper condition for its engines and trains to pass over the same.' The court erred in refusing to

give said charge without qualification, because said charge presented the law of the case correctly; and because it was decided on the former appeal of this case that plaintiff could not recover if Minnick knew there was no watchman at the bridge. The court also erred in the qualification of said charge, because there was no evidence of any defect in said bridge that the exercise of ordinary care would not have discovered.

"Sixth. The court erred in overruling defendant's motion for a new trial, because the evidence shows without contradiction that W. W. Minnick had run an engine over the bridge in question for 11 years, and there was no evidence to show that he was ignorant of the fact that there was no watchman at the bridge; and the court charged the jury that, if Minnick knew there was no watchman at the bridge, he could not recover, and, in the absence of evidence going to show he did not know it, he is presumed to have known it, and therefore the verdict is contrary to the charge of the court and to the justice of the case.

"Seventh. The court erred in overruling defendant's motion for a new trial for the following reasons. Because the verdict is contrary to the charge of the court (special charge No. 2). The uncontradicted evidence showed that the defendant kept no watchman at the bridge, and it was their custom not to keep watchmen at their bridges, and there was no evidence that Minnick did not know that a watchman was not kept at the bridge. And the court charged that, if it was the custom not to keep a watchman at the bridge, then Minnick would be presumed to know of the custom. Said verdict was, therefore, contrary to the charge.

"Eighth. The court charged the jury there was 'no evidence that the engine that it is claimed set fire to the bridge was out of repair, but it is claimed that the engine was defective in manner of original construction by having thereon a Brown smokestack;' and also charged that Minnick is presumed to have taken the risk of being injured by reason of any peculiarity in the construction of engines used by the defendant, and the evidence showed no other defect in the engine except that it had a Brown smokestack, and threw less fire through the smokestack, and more through the ash pan, than ordinary engines. And the court charged, in fourth special charge, that such facts would not constitute such negligence as would make defendant liable. Therefore the verdict of the jury is contrary to the charge of the court, and the court erred in overruling defendant's motion for a new trial, based on above grounds. Wherefore the Texas & Pacific Railway Company pray that the judgment rendered in the above cause in the circuit court on October 15, 1893, for the sum of fifteen thousand dollars, be reversed."

It appears that on the trial the judge gave as his general charge the same instructions as on the first trial, a full copy of which is given in the report of our decision, above cited. When this case was before us at the last term, the only assigned errors which we were called upon to consider were those alleged to have been committed in the refusal to give the charges requested. We held that there was no error in refusing to give the first, second, and third instructions asked, because the first two were substantially embraced in the general charge, and the third, as requested, was too narrow in its scope. We held that the fifth and sixth of the requested charges should have been given as requested. Those charges were substantially to the effect that if the engineer, Minnick, knew the peculiar construction of the engines used by the defendant, and knew there were no track walkers or watchmen at the bridge in question, he assumed the risk of being injured by reason of these facts.

It is stated in the brief submitted by the attorneys for the defendants in error that they claim in their pleadings that plaintiff in error is liable on two grounds: (1) That a defective engine of plain-

tiff in error set fire to the bridge at which Minnick lost his life; (2) that, however the bridge may have been fired, it had been burning such a length of time that plaintiff in error was guilty of negligence in not discovering it.    It is patent on the face of the pleadings and the proof that the only defect suggested or claimed to have existed in the engine used by the defendant company was the peculiar construction of the smokestack, designated by the witnesses as the Brown stack.    The pleadings alleged generally that the engine complained of was dangerous, defective, and out of repair, but there was no proof tending to show any want of repair in this engine, or any defect in it or any element of danger in it other than such as arose from its being constructed with a Brown stack.    It is evident from the statement of counsel in their brief of the claim of the defendants in error, above noticed, and from their pleadings and proof, that it was not and is not claimed that the bridge in question was otherwise defective or dangerous than as it was made so by the fire that was consuming it at the time of the accident.    The bridge was not burning when Haggerty's engine, the one complained of, passed over it, after dark, the evening before the accident.    There is no evidence tending to prove, and it is not alleged, that the customary watch was not well kept. An employe assumes the risks ordinarily incidental to his employer's business, and to the employer's known manner of having it performed, where there is no unknown defect of machinery or other unknown hazards.    Railroad Co. v. Seley (March 5, 1894) 14 Sup. Ct. 530, and cases therein cited.

William Minnick was a man 40 years old.    He was a good locomotive engineer.    He had been running as such in the employ of the defendant company, on this division of its railroad, for more than 10 years.    He knew the kind of engines used by the defendant. The engine he was driving, and had been driving for some time, had a Brown stack.    There is no evidence tending to prove that he had complained of its kind, or of the kind or condition as to construction of the smokestack of his or of any other engines used by defendant, or that he had been promised that they would be disused, and others substituted.    He knew, or with the exercise of the ordinary care incumbent on him in his employment would have known, and must therefore be presumed to have known, the customary daily watch that was kept on the track and bridges, and that there was no track walker kept on this part of the track, or watchman kept at this bridge.    He knew and understood the features and workings of the engines, and the character and extent of the watch that was kept on this bridge.    He therefore, according to the settled rule just given, assumed the risk of being injured by the use of such machinery on the track and bridges thus watched.    He assumed the risks incidental to the precise state of facts and service out of which the plaintiffs by their pleadings and proof attempt to deduce the liability of the defendant company for his tragic death.    The appalling calamity that deprived the defendants in error of their family head must stir to its depths all the pity that is in the soul

of those who try this case; and the heroism displayed by the engineer to save the lives of his passengers quickens all that is noble in the human nature of those who learn his story. The fog was so dense that he was right on the bridge before he saw that it was burning. It was only 12 feet to the ground, which was swampy and soft. He had but an instant. He could have jumped, and thus probably have saved his own life. He used that precious instant in doing all he could to save the lives of others. He set the reverse lever two notches back of the center in reverse motion. He set the air brakes to their full force. He turned sand on the track to the engine's full capacity. He could do no more, but his time to jump had passed. He went down with his engine, was buried under it, out of sight, at least three feet in the earth, crushed beyond description. He is not a fit judge in human affairs who is not touched with a feeling of our infirmity. But, in dispensing justice, we must find and measure right by rule. Where experience and adjudication have fixed the rule applicable to presented conditions, we must observe it and enforce it. The trial judge recognized the rule applicable to this case by giving the first and seventh of the requested charges, so far as they were written, when requested. He evidently saw and felt the force of that rule as expressed in those requests. The plain effect was to practically withdraw the case from the jury, and direct a verdict for the defendant. This he seemed loath to do. The judge must not invade the province of the jury. Where the line of demarcation is doubtful, the doubt must be solved in favor of the jury. It may have been the influence of these imperative considerations that led the judge to add to these charges the limitation that they would not preclude recovery by plaintiffs if the jury believe from all the evidence that defendant failed to use ordinary care to keep its bridges in proper condition for its engines and trains to pass over the same. As the supreme court has said in Railroad Co. v. Everett (not yet officially reported) 14 Sup. Ct. 474, in reference to a kindred subject: "It is not easy, in a subject of this kind, to lay down unbending rules, and conflicting cases can readily be found." But where the boundary line is plain, the judge may not yield his function to the jury. As we have already stated, in our view of the proof, there was no evidence in the case to which the rule embraced in these requests did not apply, and, taken with other requested charges given, did not control. What we have advanced reaches also that portion of the general charge embraced in the assignment of errors. In our view of the proof, there was no evidence that the bridge in question was defective and dangerous, or unfit for the purposes for which it was being used, except as it was made so by the fire that was consuming it. All the proof on the subject of that fire is clearly covered by the principle of the requested charges. Probably in no class of cases is it more difficult or more necessary for learned trial judges to so charge a jury of laymen as not to "darken counsel by words without knowledge" than in suits against railroad corporations to recover damages for injuries resulting in death.

For the reasons we have suggested, without further elaboration,

we conclude that the first five of the errors assigned point out action of the circuit court in which there was material error. The other three we do not consider. It follows that the judgment of the circuit court must be reversed, and it is therefore ordered that the judgment of the circuit court is reversed, and the cause is remanded to that court, to be proceeded with in accordance with the views expressed in this opinion.